Mr. Stephen Fry Martin County Attorney 2401 Southeast Monterey Road Stuart, Florida 34996
Dear Mr. Fry:
On behalf of the Martin County Board of County Commissioners, you ask the following question:
Are the activities of the Martin County Golf and Country Club, Inc., a not-for-profit corporation, subject to the requirements of Florida's Government in the Sunshine and Public Records Laws, section 286.011 and Chapter 119, Florida Statutes, when it leases property from Martin County for the purpose of operating a public golf course and the corporation was established and operates solely for that purpose?
In sum:
The activities of the Martin County Golf and Country Club, Inc., a not-for-profit corporation, are subject to the requirements of Florida's Government in the Sunshine and Public Records Laws, section 286.011 and Chapter 119, Florida Statutes, when it leases property from Martin County for the purpose of operating a public golf course and was established and operates solely for that purpose.
Florida's Government in the Sunshine Law, section 286.011, Florida Statutes, provides:
"All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision . . . at which official acts are to be taken are declared to be public meetings open to the public at all times[.]"[1]
Florida's Public Records Law, Chapter 119, Florida Statutes, provides that records made or received in connection with the transaction of official business by any "agency" must be open for inspection in the absence of a statute exempting such records or making the records confidential.[2] An "[a]gency" is defined for purposes of the Public Records Law to include private corporations acting on behalf of any public agency.[3]
Thus, in considering the applicability of the Sunshine Law or Public Records Law to a private organization, the courts and this office have generally reviewed the relationship between the private entity and the public agency. Section 286.011, Florida Statutes, has been held applicable to private organizations when the private entity has been created by a public agency, when there has been a delegation of the public agency's governmental functions, or when the private organization plays an integral part in the decision-making process of the public agency.[4]
The Supreme Court of Florida, in News and Sun-Sentinel Company v.Schwab, Twitty Hanser Architectural Group, Inc.,[5] set forth various criteria to be considered in determining whether a private entity is subject to the Public Records Law. In Schwab, the Court determined that the records of the private architectural firm were not subject to Chapter 119, Florida Statutes, concluding that while the school board received a benefit from the contract, the private firm's motivation was "clearly to receive compensation, not to provide a public service."[6]
Recent decisions by the courts have broadened the test used to determine whether the open government laws apply to a private entity, focusing on whether the private entity is merely providing services to the public agency or is standing in the shoes of the public agency. For example, inMemorial Hospital-West Volusia, Inc. v. News-Journal Corporation,[7]
the Supreme Court of Florida reaffirmed that a private organization, performing and carrying out the obligations of a public agency under a lease agreement, is subject to the open meeting requirements of both the Constitution[8] and the Government in the Sunshine Law. In that case, a hospital authority had delegated the performance of its public purpose to a private organization.
As the Court noted:
"We likewise agree with the Fifth District in this case in noting the distinction between providing materials or services to a public body to facilitate the public body's own performance of its public function and an agreement under which a private actor performs the public function in place of the public body. When the agreement transfers the actual public function, public access follows[.]"[9]
Thus, the Court recognized a distinction between a contract in which the private entity provides services to a public body and a contract in which the private entity provides services in place of the public entity. This office has also recognized a similar distinction.[10] For example, in Attorney General Opinion 98-49 this office stated that an association designated by a county to carry on duties of a dissolved county fine arts council and receiving funding from specialty license plates was subject to the Sunshine Law.
You state that the not-for-profit corporation was established and operates solely for the purpose of operating the public golf course. These activities take place on publicly-owned property and the private corporation is performing a service that would otherwise presumably be provided by the county.[11] In addition to the golf course, the corporation provides a clubhouse/lounge area, a pro shop and a locker room. All facilities are open and available for use by the general public. While the corporation offers a membership to the club which is available to all residents of Martin County. For an annual fee, members receive discounts on green fees and are eligible to be elected to the board of directors of the nonprofit corporation. You state, however, that members are not granted preferential tee times or exclusive use to any of the facilities.
Pursuant to Article II, section 2.3 of the lease agreement, the fees and charges for use of the property prescribed in the agreement may not be changed without the prior written consent of the county. The lease provides that the county will fund all approved projects at the golf course with a debt service contract between the county and the not-for-profit corporation, if golf course funds are not available, although financing may be arranged by the corporation from other sources at the direction of the county.[12] In addition, section 5.11 of the lease states that the not-for-profit corporation "agrees that because of the public nature of the Property and the relationship between the parties that any and all of the Country Club's records, including but not limited to contracts, agreements, employment contracts, loan documents, mortgages, memorandum, reports, studies, court records, or any other type of record, shall be fully accessible to the County's review."
Thus, it appears that the not-for-profit corporation, which was specifically created to contract with the county for the operation of the public golf course on county property acquired by public funds, would be subject to open records and open meeting requirements.
Accordingly, I am of the opinion that the activities of the Martin County Golf and Country Club, Inc., a not-for-profit corporation, are subject to the requirements of Florida's Government in the Sunshine and Public Records Laws, section 286.011 and Chapter 119, Florida Statutes, when it leases property from Martin County for the purpose of operating a public golf course and was established and operates solely for that purpose.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 286.011(1), Fla. Stat.
[2] See, s. 119.011(1), Fla. Stat., defining "Public records"; and Shevin v. Byron, Harless, Schaffer, Reid and Associates, Inc.,379 So.2d 633 (Fla. 1980).
[3] Section 119.011(2), Fla. Stat.
[4] See, e.g., Ops. Att'y Gen. Fla. 92-53 (1992) (direct-support organization created for purpose of assisting public museum subject to s. 286.011, Fla. Stat.); 83-95 (1983) (where county accepted services of nongovernmental committee to recodify and amend county's zoning laws, committee subject to Sunshine Law).
[5] 596 So.2d 1029, 1031 (Fla. 1992). The Schwab Court included such factors as: the level of public funding; commingling of funds; whether the activity was conducted on publicly-owned property; whether services contracted for are an integral part of the public agency's chosen decision-making process; whether the private entity is performing a governmental function; the extent of the public agency's involvement with, regulation of, or control over the private entity; whether the private entity was created by the public agency; whether the public agency has a substantial financial interest in the private entity; and for who's benefit the private entity is functioning.
[6] 596 So.2d at 1032.
[7] 729 So.2d 373 (Fla. 1999).
[8] See, Art. I, s. 24(b), Fla. Const., establishing a constitutional right of access to public board or commission meetings.
[9] 729 So.2d at 381 (Fla. 1999). And see, e.g., Stanfield v. SalvationArmy, 695 So.2d 501, 503 (Fla. 5th DCA 1997) (private corporation, taking over the county's role as the provider of probation services, is subject to Ch. 119, Fla. Stat.); Prison Health Services, Inc. v. Lakeland LedgerPublishing Company, 718 So.2d 204 (Fla.2d DCA 1998) (records of Prison Health Services, Inc., which undertook to act on behalf of the sheriff by providing medical services, subject to the Public Records Act); PutnamCounty Humane Society, Inc. v. Woodward, 740 So.2d 1238 (Fla. 5th DCA 1999) (humane society was subject to the Public Records Law since it performed the governmental function of investigating acts of animal abuse and seizing animals pursuant to state statute).
[10] See, Ops. Att'y Gen. Fla. 99-53 (1999) (architectural review committee of homeowners' association whose approval is required by county ordinance prior to obtaining county building permit subject to Sunshine Law); 85-55 (1985) (task force, although not appointed by the city, in effect stood in the place of the city commission when it analyzed information regarding the improvement of the downtown business district and thus was subject to Sunshine Law); 83-95 (1983) (nongovernmental advisory committee, which had been impliedly delegated the authority to act on behalf of the county commission in the examination and revision of the zoning code, subject to s. 286.011).
[11] Counties are authorized to provide recreational areas. See,e.g., s. 125.01(1)(f), Fla. Stat.
[12] See, Article III, s. 3.8 of the lease agreement.